ULRICH VS. HULL and another.

Where A., the owner of a mill dam, and B., the owner of land flowed by it, entered into mutual covenants, by which B. was not "not to sue for damages" for a certain length of time, and A., at the end of that time, was to "let the water out of the mill pond," and in case he neglected to do so, gave B. "full power and privilege to tear down the mill dam without claiming any damages of him whatever;" but after the expiration of the time specified A. neglected to comply with his agreement, and prevented B. from taking the dam down; *Held*, that a court of equity would abate the dam at the suit of B.

The covenant to permit the dam to be taken down, in such a case, must be interpreted as a covenant also against rebuilding it, such being the obvious design of the contract.

A covenant not to maintain a mill dam at a particular place does not so conflict with the public policy of this state as indicated by the mill dam law, that it will not be enforced by a court of equity.

APPEAL from the Circuit Court for *Fond du Lac* County.

This is an appeal by the defendants from a judgment in favor of the plaintiff. The facts are stated in the opinion of the court.

*Priest & Stowe*, for appellants.

*H. W. & D. K. Tenney*, for respondent.

*By the Court*, PAINE, J. The defendant *Lyman Hull* owned

a dam, by which the lands of the plaintiff and others were flowed. On the 13th of September, 1859, they entered into an agreement under seal, by which the owners of the lands flowed covenanted not to sue for damages for the space of eighteen months and seventeen days, and *Hull* covenanted, among other things, at the end of that time, " to let the water out of the mill pond," and in case he neglected to do so, he gave the other parties "full power and privilege to tear down the mill dam or the mill pond, without claiming any damages of them whatever," &c. This agreement was duly witnessed, acknowledged and recorded. The defendant *Hemingway* afterwards became jointly interested with *Hull* in the dam and mill, and after the expiration of the time specified, the defendants having neglected to comply with the agreement and having prevented the plaintiff and the other owners from taking the dam down, this suit was brought for the purpose of abating it, and the court below gave judgment that it be abated.

The appellants contend here that this judgment ought not to have been rendered, for the reason that ·it will be of no avail to the plaintiff. It is said, that the agreement only requires the dam to be taken down, and that the defendants would have the right immediately to rebuild it, as there was no covenant not to rebuild. If this is the true construction of the agreement, it would perhaps be a good reason why a court of equity should not interfere. But we are satisfied that the agreement cannot be thus limited in its effect. The intention of the parties, as it appears from the writing, is what constitutes the agreement. And there is not room for a moment's doubt that it was the intention of these parties to provide, not merely that the dam should be taken down, but that it should be kept down. The nature and subject matter of the contract fully show this.

Suppose A. and B. occupy adjoining lots. B. erects a nuisance upon his lot which A. has the right to have abated. They

make an agreement by which A. covenants to take no steps to abate it for the space of six months, and B. covenants that at the end of that time " he will remove the nuisance : " could it possibly be said that he might, without violating this covenant, remove the nuisance on one day and erect it again the next? Certainly not. The whole scope and object of the agreement would show that the meaning was, that at the end of the time specified, A. should be relieved from the nuisance. So here it is equally clear that the parties contracted to be relieved from the injuries occasioned by this dam. A covenant not to rebuild the dam or reflow the lands is irresistibly implied.

As remarked by the court in *Blood vs. Howard Fire Ins. Co.*, 12 Cush., 473, " It is quite true that in many cases stipulations in form only affirmative, have been held to be in fact promissory." The court there referred to a class of insurance cases, quite familiar, in which it is held that mere representations by the assured, in respect to the condition of the property, amount to agreements on his part, that the same condition shall remain during the life of the policy. It is true, there are many representations, as was held in the one in that case, to which this doctrine does not apply. But it is simply because the nature of them shows that such was not the intent of the parties. But where the intent is unmistakable, such representations are construed to be promises that the condition represented shall remain during the life of the policy. And by the same reasoning, where the subject matter of the contract was on the one side to obtain the privilege of maintaining the dam for a certain time, and on the other, to be relieved from the damages occasioned by it after that time, a covenant by the owner to take down the dam, must be held a promise to keep it down. In *Harlan vs. Lehigh Coal Co.*, 35 Penn. St. Rep., the court say, " Undoubtedly the court will construct a warranty or other contract, where none is in terms expressed by the parties, if our common sense of justice requires it, and it is es-

sential to complete the definition of the relation plainly intended to be established between the parties, and if its terms can be clearly deduced from the instrument and from the nature of the transaction." To this case that doctrine is plainly applicable. The construction contended for by the appellant would merely "keep the word of promise to the ear but break it to the hope."

But it is further contended, that a court of equity ought not to interfere to enforce an agreement of this character, for the reason that it is against public policy. But it may be observed, that the relief here sought is only such as the plaintiff would have been entitled to without any agreement, except for the provisions of the mill dam law. No man had, at common law, a right to flow his neighbor's land by a mill dam, any more than in any other way. If he did so, it was a nuisance against which a court of equity would relieve. *Hill vs. Sayles*, 12 Cush., 454. Now it is true the mill dam law has given parties the right to flow the lands of others after compensation is made in the manner therein prescribed. But this cannot be regarded as establishing a public policy that should invalidate a fair contract by which one agrees not to maintain a dam at a particular place. On the contrary, this question would seem to depend for its solution upon the same principles applicable to agreements in restraint of trade. And while agreements in restraint of trade in general are invalid, yet it is well established that they are not so when in restraint of trade in a particular place only. See *Laubenheimer vs. Mann*, decided at this term. We are unable to see why the fact that mill dams have been held to be of sufficient importance to justify an exercise of the right of eminent domain in their favor, should take the question as to whether a dam should be erected in any particular place, out of the power of the parties interested, to determine by a contract fairly entered into.

We see no reason for reversing the judgment, and it is affirmed with costs.